UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAREN F.,

                 Plaintiff,                **DECISION AND ORDER**

     v.

                             1:22-CV-00250 EAW

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Karen F. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 11; Dkt. 13). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted, and Plaintiff's motion (Dkt. 11) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on July 22, 2019. (Dkt. 4 at 19, 71).[1] In her application, Plaintiff alleged disability beginning July 5, 2019, due to the

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

following impairments: type II diabetes; osteoarthritis; depression; injured leg; degenerative disc disorder; gastroparesis; GERD; diabetic neuropathy; diabetic foot disease; low kidney function; urinary tract infection; rheumatoid arthritis; psoriatic arthritis; psoriasis; a-dermatitis; cirrhosis of the liver; fatty liver; diverticulosis; heart murmur; pinched nerves in neck, shoulders, and back; and polycystic ovarian disorder. (*Id.* at 19, 72-73). Plaintiff's application was initially denied on November 22, 2019, and upon reconsideration on August 5, 2020. (*Id.* at 19, 127-32). A telephone hearing was held before administrative law judge ("ALJ") Janet McEneaney on January 19, 2021. (*Id.* at 19, 40-70). On July 28, 2021, the ALJ issued an unfavorable decision. (*Id.* at 16-33). Plaintiff requested Appeals Council review; her request was denied on January 21, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-12). This action followed.

## **LEGAL STANDARD**

### I.   **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 22, 2019, the application date.  (Dkt. 4 at 21).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative joint disease of the right knee with non-displaced patellar fracture and vastus lateralis partial tear, degenerative joint disease of the left knee, degenerative disc disease,

diabetes mellitus, COPD, and obesity." (*Id.* at 22).  The ALJ further found that Plaintiff's medically determinable impairments of coronary artery disease, myocardial infarct, myopic astigmatism, and mild non-proliferative diabetic retinopathy were non-severe. (*Id.*).  With respect to Plaintiff's representations that she suffered from depression and anxiety, psoriatic arthritis, rheumatoid arthritis, and ascariatic arthritis, the ALJ concluded that these were not medically determinable impairments.  (*Id.* at 22-23).  The ALJ further found in the alternative that Plaintiff's psoriatic arthritis, rheumatoid arthritis, and ascariatic arthritis were non-severe impairments.  (*Id.* at 23).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 23).  The ALJ particularly considered the criteria of Listings 1.15, 1.16, 1.18, 1.22, 3.02, and 9.00, in reaching her conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p.  (*Id.* at 23-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that Plaintiff:

> can occasionally stoop, crouch, kneel, and crawl.  She must avoid exposure to extreme heat/cold, wetness/humidity, and pulmonary irritants.

(*Id.* at 24).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 31).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of carding machine operator, lens

inserter, and ink printer.  (*Id.* at 32).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 32-33).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ rejected the medical opinions in the record and improperly substituted her non-medical judgment with respect to Plaintiff's physical limitations, and also that the ALJ failed to develop the record.  (Dkt. 11-1 at 1, 18-30).  Specifically, Plaintiff argues that the ALJ rejected all medical opinions regarding Plaintiff's physical limitations as stale, interpreted raw medical data to formulate the physical RFC, and did not obtain a consultative physical examination.  (*Id*. at 21).  Plaintiff points specifically to the ALJ's assessment of the opinions offered by two state agency medical consultants, Gary Ehlert, M.D. and H. Miller, M.D., which she contends created a gap in the record that the ALJ was obligated to fill.  (*Id*. at 24-25).  Plaintiff further argues that the ALJ should have obtained a Department of Social Services (DSS) form she contends was completed by Mercedes Barber, NP, from her primary care provider.  (*Id*. at 27).  The Court has considered each of these arguments, and finds them to be without merit.

### A.   Assessment of Medical Opinion Evidence and the RFC

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," *id*., an ALJ is not a medical professional, and therefore she "is not qualified to assess a

claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).  However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

The Court turns first to the ALJ's assessment of the opinion offered by Dr. Ehlert. Dr. Ehlert offered an opinion as to Plaintiff's physical functional limitations on November 21, 2019.  (Dkt. 4 at 79-81).  Dr. Ehlert opined that Plaintiff could frequently kneel, crouch, and crawl, and that she had environmental limitations, including that she should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation, which could trigger her COPD.  (*Id.* at 80).  Dr. Ehlert opined that Plaintiff could perform an RFC of light work.  (*Id.* at 610-12).  The ALJ discussed Dr. Ehlert's opinion in the written determination:

> I do not find the November 2019 opinion of Gary Ehlert, MD that the claimant could perform a range of light work to be persuasive (Exhibits B2A; B19F).  In finding this opinion unpersuasive, I note that he supports the opinion with a review of the record through November 2019 but that he did not examine the claimant or review any evidence after November 2019.  His opinion is not consistent with the longitudinal evidence of record that reflects

> significant unresolved symptomatology in the right knee, as exacerbated by
> degenerative joint disease in the left knee and obesity that supports a finding
> that the claimant is not able to lift 20 pounds occasionally and stand/walk for
> about six hours in an eight-hour day.

(*Id*. at 30).

Dr. Miller offered an opinion as to Plaintiff's physical functional limitations on August 4, 2020. (Dkt. 4 at 96-99). Dr. Miller found that Plaintiff had exertional limitations; specifically, that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of four hours, sit (with normal breaks) for more than six hours on a sustained basis, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, occasionally kneel, crouch, and crawl, and that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, which could trigger Plaintiff's COPD. (*Id*. at 96-98). Dr. Miller opined that, based on the totality of the evidence, Plaintiff could perform a "light RFC with occasional ability to climb, kneel, crouch, and crawl," and that she should "avoid concentrated exposure to respiratory irritants." (*Id*. at 98). The ALJ discussed Dr. Miller's opinion in the written determination:

> I do not find the August 2020 opinion of H. Miller, MD that the claimant
> could perform a range of light work with standing/walking up to four hours
> in an eight-hour day to be persuasive (Exhibit B4A). In finding this opinion
> unpersuasive, I note that he supports the opinion with a review of the record
> through August 2020 but that he did not examine the claimant or review any
> evidence after August 2020. His opinion is not consistent with the
> longitudinal evidence of record that reflects significant unresolved
> symptomatology in the right knee, as exacerbated by degenerative joint
> disease in the left knee and obesity that supports a finding that the claimant

is not able to lift 20 pounds occasionally and stand/walk for four hours in an eight-hour day.

(*Id*. at 30-31).

The ALJ's assessment of the opinions offered by Dr. Ehlert and Dr. Miller was proper, and the ALJ's rejection of these opinions in favor of a more restrictive, sedentary RFC is supported by the record. Further, there is evidence supporting the sedentary RFC[2], and it is clear to the Court how the ALJ arrived at the RFC determination. The ALJ explained that the medical record reflected "significant right knee symptomatology, as exacerbated by obesity, degenerative joint disease in the left knee, degenerative disc disease, diabetes, and COPD," but that Plaintiff retained the ability to perform sedentary work with limitations. (*Id*. at 30). To support this conclusion, the ALJ discussed Plaintiff's testimony at the administrative hearing, including that she can walk for ten minutes at one time, can stand for two hours (so long as she is not standing still), and that she is able to sit for two hours at one time. (*Id*. at 24). The ALJ also discussed Plaintiff's testimony with respect to her daily activities, including that she can dress herself, cook, and shop, so long as she may use a scooter or wheelchair provided by the store. (*Id*. at 29). The ALJ noted that Plaintiff can perform some chores, such as laundry, she can shower independently and drive, and she attends church. (*Id*.); *see also Angela H.-M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-06676 EAW, ___ F. Supp. 3d ____, 2022 WL 4486320, at *7 (W.D.N.Y. Sept.

---

[2]    Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *See* 20 C.F.R. § 416.967.

27, 2022) ("While and ALJ is not permitted to interpret raw medical data in assessing the RFC, it is well-settled that an ALJ may consider Plaintiff's activities of daily living when evaluating her credibility.").  The ALJ further noted that Plaintiff started working at a laundry job only days prior to the administrative hearing, which was consistent with a finding that Plaintiff retained the capacity for performing a reduced range of sedentary work.  (Dkt. 4 at 30; *see also id*. at 47 (Plaintiff's testimony at administrative hearing discussing her work in laundry room, which required her to put laundry in the washer and the dryer, to sit and fold, and to stand and hang clothes)).

The ALJ also considered the opinions offered by Dr. Ehlert and Dr. Miller—both of whom opined that Plaintiff could perform light work with limitations—in assessing the RFC.  (*Id*. at 30-31).  The ALJ adopted Dr. Ehlert's and Dr. Miller's opinion that Plaintiff required environmental limitations to accommodate her COPD.  Although the ALJ rejected Dr. Ehlert's and Dr. Miller's assessment that Plaintiff retained the capacity to perform light work, the ALJ assessed a more restrictive RFC for sedentary work.  *See My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 106-07 (W.D.N.Y. 2021) ("The fact that the ALJ imposed more restrictive limitations is not a basis for remand." (collecting cases)); *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit.").  Based on this evidence, the ALJ concluded that while the record reflected that Plaintiff had a significant right knee impairment, which was exacerbated by obesity, degenerative joint disease in the left knee,

degenerative disc disease, diabetes, and COPD, she was capable of performing sedentary work with a further limitation for respiratory irritants.  (*Id*. at 30).

Plaintiff has failed to point to evidence demonstrating that she requires further functional limitations beyond those assessed in the RFC, or that she is unable to perform sedentary work.  Indeed, much of Plaintiff's briefing in the argument section of her motion consists of citations to caselaw, rather than a meaningful discussion of the evidence or how the medical record supports that further functional limitations are required.  Accordingly, the Court concludes that the RFC is supported by substantial evidence, and remand is not required on this basis.

## B.     Development of the Administrative Record

Plaintiff also raises several arguments relating to the ALJ's duty to develop the administrative record, including that the ALJ created a gap in the record by rejecting the opinions offered by Dr. Ehlert and Dr. Miller, that the ALJ should have ordered a consultative examination, and that the ALJ was obligated to obtain a DSS form purportedly completed by Ms. Barber.  The Court will address each of these arguments in turn.

Plaintiff argues that because the ALJ found the opinions offered by Dr. Miller and Dr. Ehlert to be unpersuasive, the ALJ created a gap in the record which she was required to fill, including by ordering a consultative physical examination.[3]  (*See* Dkt. 11-1 at 21).

---

[3]     Plaintiff contends that the ALJ rejected the opinions offered by Dr. Ehlert and Dr. Miller as "stale."  (Dkt. 11-1 at 21-25).  She cites to cases discussing the impropriety of relying on a stale medical opinion, such as when the ALJ relies on a medical opinion issued before the plaintiff's condition significantly deteriorated or the plaintiff underwent surgery, and therefore the stale opinion did not account for any additional limitations.
Here, the ALJ did not reject Dr. Ehlert's or Dr. Miller's opinion because it was stale. Rather, as explained above, the ALJ rejected these opinions because "the longitudinal

As explained above, contrary to Plaintiff's implication, the ALJ is not required to adopt any one medical opinion in fashioning the RFC. *See Matta*, 508 F. App'x at 56 (ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision"). Rather, the ALJ is required to assess an RFC that is consistent with the record as a whole. *Id*.; *see also Schillo v. Kijakazi*, 31 F. 4th 64, 78 (2d Cir. 2022) (where the ALJ gave medical opinions "lesser weight," finding that the RFC was supported by substantial evidence because the ALJ "still considered their conclusions to assess [the plaintiff's] RFC," and the ALJ "also looked to the other sources in the administrative record, including MRI results, x-ray results, and notes documenting [the plaintiff's] visits with other medical providers.  Using these opinions and data points, the ALJ laid out with specificity [the plaintiff's] physical capabilities"). Accordingly, the ALJ was not required to obtain a third medical opinion relating to Plaintiff's physical functional limitations simply because she found the opinions offered by Dr. Ehlert and Dr. Miller to be unpersuasive.

Plaintiff is correct that the ALJ has a duty to develop the administrative record. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v.*

_____

evidence of record" supported greater limitations.  (Dkt. 4 at 30-31).  While Plaintiff contends that she twisted her left knee in August 2020, after Dr. Ehlert and Dr. Miller offered their opinions (*see* Dkt. 11-1 at 24), she fails to articulate how the injury to her left knee rendered the opinions stale, such as what additional limitations she required because of this injury.  Further, the ALJ discussed Plaintiff's left knee injury in the written determination, but noted that by September 30, 2020, a left-knee injection had provided Plaintiff with relief, Plaintiff reported that she "popped her knee back into place," her pain had significantly improved, she discontinued wearing the knee brace, and an examination revealed full strength and intact sensation.  (Dkt. 4 at 29).

*Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).  "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17 CIV 5392 (GBD)(KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018).  "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  However, the ALJ's duty to develop the record is not limitless.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).  With respect to ordering a consultative examination, "[t]he ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014); *see also* 20 C.F.R. § 416.920b.  "An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination.  On the other hand, it is a reversible error for the ALJ to fail to obtain a consultative examination

if such an evaluation is necessary for the ALJ to make an informed decision." *Phelps*, 20 F. Supp. 3d at 402 (quotations and citations omitted).

The Court concludes that the ALJ was not required to further develop the record in this case, including by ordering a consultative examination, because the evidence of record was "adequate to permit the ALJ to make a disability determination." *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010). The record before the Court is over 900 pages long, and it includes medical opinions from multiple sources. In the written determination, the ALJ considered Plaintiff's treatment notes from multiple providers, as well as imaging studies. (*See, e.g.*, Dkt. 4 at 25, 28 (discussing various imaging studies, including a November 27, 2018 right knee x-ray, which showed mild medial joint space narrowing and small joint effusion; a May 20, 2019 x-ray of the right knee, showing moderate multi-compartment arthritis, but no displaced fracture or dislocation; and a July 7, 2020 x-ray of the right knee, showing degenerative changes with lateral joint line collapse, osteophyte formation, and diffuse osteopenia but no fractures)). Further, the ALJ discussed records provided by David Pula, M.D., an orthopedist. (*See id*. at 26 (discussing July 19, 2019 examination, wherein Dr. Pula observed full strength in the bilateral knees, decreased range of motion in the right knee, intact sensation, and tenderness and effusion in the right knee); *id*. at 27, 29-30 (discussing that Dr. Pula scheduled a right knee arthroplasty, but that this surgery was delayed due to cardiac clearance, and had not occurred as of the administrative hearing date due to delays stemming from the Covid-19 pandemic); *id*. at 28 (discussing

July 7, 2020 examination by Dr. Pula, who found full strength in the right lower extremity, with sensation intact bilaterally to touch)).

The ALJ also discussed four medical opinions assessing Plaintiff's work-related functional limitations, including two opinions offered by state agency medical consultants assessing her physical limitations. (Dkt. 4 at 30-31). It is well-settled that the opinions of state agency medical consultants may serve as substantial evidence supporting an RFC. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (opinion of state agency consultant "may constitute substantial evidence in support of residual functional capacity findings" (citation omitted)); *see also Woytowicz v. Comm'r of Soc. Sec.*, No. 5:15-CV-0906 (GTS/WBC), 2016 WL 6427787, at *5 (N.D.N.Y. Oct. 5, 2016) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."), *adopted*, 2016 WL 6426385 (N.D.N.Y. Oct. 28, 2016). Accordingly, this is not a case where there were no medical opinions relative to Plaintiff's physical functional limitations, or where the record more generally lacked information pertaining to Plaintiff's physical impairments such that the ALJ could not assess an RFC supported by substantial evidence. Plaintiff has failed to articulate any valid reason as to why the ALJ was required to order a consultative examination under the circumstances. Accordingly, remand is not required on this basis.

Plaintiff further contends that the ALJ failed to develop the record by obtaining a DSS form she contends was completed by Ms. Barber. (Dkt. 11-1 at 27). Plaintiff references a medical note completed by Ms. Barber on August 14, 2019, stating that she

completed a DSS form and a copy was scanned into Plaintiff's chart; however, no such form was included with Ms. Barber's records when they were obtained by the SSA. (*Id.* at 27-28).

At the January 19, 2021 administrative hearing, Plaintiff's attorney represented that the record was complete, other than outstanding records from Community Health Center, Plaintiff's primary care provider. (Dkt. 4 at 43). Plaintiff's attorney requested that the ALJ hold the record open for two weeks following the hearing so that he could submit the records, and the ALJ granted this request. (*Id.*). Thereafter, on February 1, 2021, Plaintiff's counsel wrote to the ALJ that there were still outstanding records and requested another two weeks to obtain the evidence, and then on March 22, 2021, confirmed the record was complete. (*Id.* at 325-26). There was no DSS form from Ms. Barber submitted, despite requests by both counsel and the Commissioner to obtain Ms. Barber's records. (*See, e.g., id.* at 76, 325). Plaintiff has failed to show how the ALJ did not fulfill her duty to make reasonable efforts to obtain this alleged missing report from Ms. Barber. *See Martin v. Saul*, No. 18-CV-1478-HKS, 2020 WL 5096057, at *3-4 (W.D.N.Y. Aug. 28, 2020) (explaining that "the ALJ's obligation [to develop the administrative record] is not unlimited," and "[a]n ALJ may satisfy her duty to develop the record by holding the hearing open to permit submission of additional evidence"); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020) ("even if the ALJ's duty to develop the

record was triggered, the ALJ satisfied her duty by holding the record open after the hearing and subsequently granting Plaintiff's two requests for two-week extensions").

In sum, the record before the ALJ was sufficient to allow for the assessment of an RFC supported by substantial evidence, and it is clear to the Court how the ALJ arrived at an RFC requiring sedentary work.  Accordingly, remand is not required.

### CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 2, 2023
       Rochester, New York